THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEITH NELSON,<br><br>  Plaintiff,<br><br>v.<br><br>LATOYA HUGHES, WEXFORD HEALTH SERVICE, INC., CORRECTIONAL OFFICER GONCLAVES, SERGEANT HAPER, WARDEN JOHN BARWICK, DR. PERCY MYERS, NURSE SUSAN, and NURSE TARA,<br><br>  Defendants. | Case No. 3:25-cv-01133-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Keith Nelson, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Graham Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Pinckneyville Correctional Center. Nelson alleges that he was delayed treatment for his chronic medical condition in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, the IDOC, and Wexford Health Sources, Inc.

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Keith Nelson suffers from a chronic medical condition, sarcoidosis, which causes him chest pains. (Doc. 1, p. 9). On September 25, 2024, Nelson was suffering from chest pains and having difficulty breathing. When Nurse Susan passed by his cell while handing out medications on the wing, Nelson informed her of his pain and breathing issues. *Id*. Correctional Officer Gonclaves was present with Nurse Susan when Nelson spoke to her. Nurse Susan told Nelson that to receive medical care, a medical code would have to be called by the officer. *Id*. But Gonclaves refused to call a medical code for assistance, even after Nelson explained that his chest pain and breathing issues were triggered by being placed in handcuffs for five hours during a recent shakedown. *Id*.

Nelson later spoke to Sergeant Haper while he was making rounds and informed him of his chest pains. (Doc. 1, p. 9). Nelson explained that Nurse Susan said the only way he would get care is if a medical code was called. Nelson continued to press his call button for several hours until another correctional officer approached and explained that Nurse Tara was in the building and would come to see him after she got set up. *Id*. But the correctional officer never returned, and Nelson never heard from Nurse Tara. *Id*. Nelson spent the entire day in pain due to the lack of medical care.

During the following shift, other inmates began yelling for staff to obtain medical care for Nelson. (Doc. 1, p. 10). Sergeant Dillard came to Nelson's cell, and Nelson explained that he was denied medical care from Gonclaves and Nurse Susan. *Id*. A porter later told Nelson that Nurse Tara told him Nelson was scheduled to be seen the next morning. *Id*.

On October 13, 2024, during a sick call, a nurse realized that Nelson was having difficulties breathing and referred him to a doctor. (Doc. 1, p. 10). Nelson alleges that he went 20 days from his initial complaints regarding his condition before receiving care. *Id*. On October 21, 2024, Nelson saw a nurse practitioner and/or doctor and was given a waist chain permit to prevent the breathing issues caused by being cuffed behind his back. *Id*. On October 25, 2024, Nurse Practitioner Ashitti ordered x-rays and prescribed him a steroid inhaler for his breathing issues. *Id*. Ashitti noted that he may eventually need a referral to an outside specialist. Nelson alleges that he wrote numerous letters and grievances to the healthcare administrator or the warden. *Id*.

### PRELIMINARY DISMISSALS

Nelson lists John Barwick, Latoya Hughes, Dr. Percy Myers, and Wexford Health Service, Inc. ("Wexford") in the caption of his Complaint, but he fails to include any allegations against them in his statement of claim. In listing Barwick as a defendant, he merely states that the warden failed to maintain adequate healthcare services and supervision. (Doc. 1, p. 4). But neither the warden nor the director of IDOC Latoya Hughes can be liable for the actions of their employees because the doctrine of *respondeat*

*superior* (or supervisory liability) does not apply to Section 1983 claims. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Nelson also fails to include any allegations against Dr. Myers. He notes that he was seen by a medical doctor but fails to indicate that this medical provider was Dr. Myers. Further, he alleges that the doctor prescribed him a waist chain permit to prevent future breathing attacks. Thus, the allegations do not indicate deliberate indifference on the part of the doctor.

Finally, Nelson fails to state a claim against Wexford. Wexford can only be liable for deliberate indifference if it had a policy or practice that caused the constitutional violation. *See, e.g.*, *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *see also McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Nelson merely lists Wexford as a defendant and indicates that its medical staff failed to provide adequate medical treatment, and there were ineffective policies. He fails to identify the policies that led to the delays in his treatment. Thus, any potential claim against John Barwick, Latoya Hughes, Dr. Percy Myers, and Wexford Health Service, Inc. are **DISMISSED without prejudice**.

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following count:

> **Count 1:** Eighth Amendment deliberate indifference to medical needs claim against Nurse Susan, C/O Gonclaves, Sergeant

> Haper, and Nurse Tara for delaying medical care for Nelson's breathing issues and chest pain.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

At this stage, Nelson states a viable claim for deliberate indifference against Nurse Susan, C/O Gonclaves, and Nurse Tara. Nelson alleges that he specifically asked Nurse Susan and C/O Gonclaves for medical care, but they refused to provide him with treatment or call in a medical code to obtain care for Nelson. He also alleges that Nurse Tara was aware of his need for care but did not immediately schedule him for an appointment. A delay in treatment can amount to deliberate indifference if the "delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). Here, Nelson alleges that he continued to suffer in pain until he was seen by medical staff.

Although Nelson alleges that he spoke to Sergeant Haper and informed him of Nurse Susan's actions, he fails to allege Sergeant Haper's response. There are simply no

---

[2] *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

allegations to suggest that Haper acted with deliberate indifference. Thus, any claim against Haper is **DISMISSED without prejudice**.

## DISPOSITION

For the reasons stated above, Count 1 shall proceed against Nurse Susan, Nurse Tara, and C/O Gonclaves. All potential claims against Sergeant Haper, Latoya Hughes, John Barwick, Dr. Percy Myers, and Wexford Health Service, Inc. are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Nurse Susan, Nurse Tara, and C/O Gonclaves: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Nelson. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Nelson, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Nelson's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Nelson, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Nelson is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 17, 2025.**

Digitally signed by Judge Sison
Date: 2025.07.17 13:50:38 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**